Dillon v. Clackamas County Mr. Berman Mr. Berman, please unmute yourself I should be unmuted We can hear you. Good morning, Mr. Berman Good morning. Should I begin? Yes, please Thank you May it please the court, counsel My name is Leonard Berman. I represent the plaintiffs in this matter William Dillon et al. v. Clackamas County on appeal from the granting of summary judgment for defendants in a case involving strip search policies in the Clackamas County Jail most specifically daily hallway strip searches and one specific mass strip search on October 11, 2012 due to alleged exigent circumstances and plaintiffs assert that there is a plethora of genuine issues of material fact in this case that precluded summary judgment by the court and specifically as to their policy, both state and federal the policy itself is constitutionally infirm based on the language of 25.47.4C2D unclosed searches are to be viewed by 1. staff members conducting the search 2. staff members working in the area 3. other inmates being searched at the same time and evidence in the case shows that female deputies, female inmates closed circuit television broadcasted in the hallways daily, non-exigent circumstances strip searches of 5-10 men at a certain period after which they instituted separation stalls which were also infirm because people there were only 3-sided stalls and both other staff and other inmates could walk by and see naked inmates Mr. Berman, are we talking about both the return from court searches and the emergency strip search or what are we talking about here? well, as to the emergency strip search I'm talking right now, your honor about the daily policy of Clackamas County return from court or what have you just in general, which apparently applies to all strip searches and I presume as well the emergency one but as to if the court wants me let me clarify as I understand the appeal in this case the return from court searches you're raising a challenge to the policy and the way it was conducted but as for the October 2012 search you're not challenging a policy there you're challenging whether there was in fact an exigent circumstance and the way in which that single search was conducted in response to that exigent circumstance am I understanding the appeal correctly the way you framed it in this case? yes, your honor however, I see them both under the umbrella of the same policy of unclosed searches and who can view them and seemingly authorizing both the return from court and the exigent quote-unquote exigent search is mass strip search the policy is an umbrella for both so I don't see that one is routine one is allegedly exigent and yes, I'm asking the court to determine whether what was viewed and what was alleged was an exigent circumstance requiring what transpired in the video which appears to be an orderly and non-exigent circumstance for mass strip searching outside of cells instead of inside of cells and taking people in and out from them the alleged weapon or contraband was missing for days or weeks with no harm to anybody it wasn't like there was a bomb threat or a gun or a knife or drugs so now you're talking only about the emergency correct that's the emergency correct but in both cases it's the policy and how it was implemented that's okay let me just a minute I want to take you back to your what you said right at the outset which apparently is at the heart of your claim and that's that female deputies who monitor the screens in the monitoring room are able to see these strip searches is that right? is that what you're okay  that shows that female deputies regularly and consistently and are on duty in the monitoring room when they're looking at the screens viewing these searches what's the evidence? your honor the evidence is your honor the declarations of Mr. Love Mr. Dillon all of the plaintiffs are in their declaration they would stand in the hallway and there is a big window staffed only by women who hand out the paperwork for the inmates and they would see them live on a daily basis from that window your argument is that you started out by focusing on the camera right okay I'm asking you what evidence is there that shows that women were in the monitoring room viewing these searches on the cameras not live okay as for the cameras the deposition testimony of Jennifer Freeman was that female deputies could and did see routinely script searches on the nine monitors throughout the facility as they were going on and that was available and did happen per her testimony so does that evidence show that they were in there regularly and at all times in the monitoring room watching the screens it shows that on a regular basis they were being viewed in the screens by the screens on a regular basis it could mean for five minutes a day or it could mean hours a day which would we would argue your honor either one would be violative of the rights of the inmates five minutes or five hours your honor okay they have a right not to be viewed by female deputies female inmates or other staff what's the evidence that female deputies were in the hallway or in the doing the laundry or whatever that shows that on a regular consistent basis they were able to see the strip searches the declarations of the plaintiffs state that they would regularly be in the hallway they would see female deputies go by they saw female inmates go by they saw female inmates doing laundry down the hall catching glimpses of them watching them strip searched from their vantage point from the laundry room and so they were able to see them and that is in the declarations of Dillon Love Hodges Browy and all of those plaintiffs that is their testimony of the female staff and inmates seeing them on a regular basis with no encumbrance whatsoever I thought council that the evidence showed that out of 47 deputies only 7 were female and so just when you look at the numbers they very infrequently were in the control room where the cameras were rotating is that not the record  Whether it's the cameras or live your honor the testimony is there were 9 screens that were viewable by female deputies whether in the control room or in the other stations on a regular basis and had views of naked inmates there that they did see and Jennifer Freeman stated that they did see them on a regular basis and they were able to and this was violative of their privacy rights your honor under state and federal law Council turning to the search on October 10 2012 you're not contesting that there was an exigent circumstance are you from plaintiff's perspective there was no exigent circumstance that required the mass strip search in the hallway by by Clackamas County it was a pretext a piece of metal broken off from a computer if I recall correctly that could be fashioned into a weapon is not an exigent circumstance in the jail setting your honor the piece of metal was never found the piece of metal was never but how is that relevant to whether there was an exigent circumstance it was relevant to exigent circumstance your honor because there was not a mass threat to the safety of the inmates while it was existing for a week or two weeks in the jail it was not an emerging defuse a bomb or something that posed a mass or individual threat and so there was no reason I have a very hard time understanding that argument you have a piece of metal that could be formed into a shank that is a risk of harm to someone right it's a risk of harm to someone yes and so therefore a search can and perhaps should be done in an orderly fashion with one inmate in a cell and one inmate outside the cell with guards there so that they can assure that they are not nowhere to be found and if that is done properly then there is no constitutional infirm search however why they have to be done in this mass setting under those  conditions  the person is exposed privately and exposing himself only to the minimum necessary not to other inmates not to other guards not in a public free for all and that would have taken a negligible amount of time and resources or effort to timely search all the inmates so that they could be all vetted for not having the contraband but that exigency in their mind didn't warrant that constitutional protection and how do we know that this manner of doing things was available we know this because the video shows it was available there is we know there is staff available to swap them in and out of the cells and we know that it's available on a daily basis they could have put people into private cell private bathrooms rooms and they did that in the past we know they could have put in stalls to protect them where do we find that on the record that's in the record we believe under the captain E.B. his testimony and under Jennifer Freeman and trainer Thompson indicates that they put in the stalls and he cannot explain why the previous privacy the stalls wouldn't the stalls have cut toward the return from court searches the stalls pertain to the return from court searches there was nothing preventing that from happening as a reasonable alternative to mass naked strip searches your honor there were a plethora a multitude of other options for them to do to prevent there being a mass strip search even with the so-called exigent circumstances it was a negligible amount of administrative or time to protect their rights your honor how do we know this we know this because the video demonstrates the ability to go in and out of the cells in a two step three pace distance and swap them out it's evidence there and it's available it's not controverted by the county that it couldn't be done it was an option not an impossibility or a non-viability would you like to save the remainder of your time yes please may it please the court counsel I'm Sean Lilligren for defendants I'd like to focus my argument on plaintiff's fourth amendment claims and then turn to the district court's decertification of the class action status well maybe you could address some of what Mr. Berman has said about the evidence the possibility or probability of female guards witnessing the searches being more than incidental what do you have to say about that evidence given the standard here for the court the law requires under Florence for plaintiff to come forth with substantial evidence he's brought nothing but attorney argument on that issue the reality is that there was theoretical possibility he claims that the Jennifer Freeman deposition  that the female guards could see the searches on more than incidental basis I understand what you're saying but the record speaks for itself and that characterization is not accurate it's at the excerpts of record 55 is the exact place in the record where deputy Freeman's transcript is provided to the court for its reference you can see there that she says it's theoretically possible that could happen but in fact it is not theoretically it's a possibility but what's missing from the record entirely is any demonstration that that was some sort of policy practice routine basis there's nothing in the record to show what frequency or if that ever actually occurred all the record is filled is filled with speculation sometimes by the attorney himself and sometimes the witness for the county confirming yeah that theory is possible but the law requires more I just wanted to make sure I understood the exhibits that were attached to captain Eby's declaration he attached some photos and a map and the map was a supplemental excerpts of record 59 do you have that I just want to ask you I have 59 in front of me now okay so as I understand it where it says the vehicle sally port on the left and then there's a hallway that's the hallway that we talk about is that right that's correct okay and then the REL is the area where this where the searches took place yes well there's two places your honor the ALCO and the REL correct those those are the two locations not the hallway itself well Mr. Love's declaration he says well I was you know searched in the hallway right so I can I think clarify what's going on there in the hallway that's where there currently is a privacy panel there's five stalls that's in the hallway where it says privacy along that so to the extent there were hallway searches they were only as a matter of policy pattern practice with the panels present so that's why it's not even theoretically possible that there was some sort of inadvertent observation of the male search that would be with respect to live viewing but I guess there are cameras in that hallway correct yes cameras are yes cameras are present yes theoretically if somebody were in the control room female they could theoretically see what's taking place in the hallway that's correct okay but we don't know how many times or how frequently women were in the control room monitoring the cameras right so we don't have an exact no there's nothing specific other than what the record shows in EVs declaration is that there's a low frequency of female employees at the jail believe it that in out of 47 or so and so the likelihood especially given that the small number of female deputies have to primarily focus on the male deputies available to go to the control room to observe okay I have two last questions for you on this uh the allegation that the female deputies were doing the laundry again that took place as you round the corner where they had the bin to stack the laundry is that right that's right and so what they're claiming is that the female deputies could theoretically look around the corner and see searches taking place right that's the argument and the response from the county is that that's not supported by the evidence it's a theory but it's not even a reason the reality is that the deputies call out when they are about to conduct a group strip search and so everybody knows in that area of the jail what's about to happen female inmates doing laundry are not by themselves they're supervised by another deputy and so they are supervised literally around the corner out of any sort of view of that strip search when it occurs that's             evidence the reality is that the deputies call out when they are about to conduct a group strip search and so everybody knows in that area the reality is that the deputies call out when they are about to conduct a group strip search when it occurs that the deputies call out when they are about to conduct a group strip search when it occurs  they  about to conduct a group   when it occurs that the particular deputies call out when they are about to conduct a group strip search when it occurs that the violence takes up    stipend and  they don't need sex control or occupational disability courts or  health court the United States or any area where you exercise judicial restraint especially for facilities like this this presents a heavy burden for the detectives what does it look like what does it mean the Supreme Court in Florence answered the court's review of a strip search the majority in Florence deferred to the opinion of the local jail official over plaintiff detainee evidence from several professional organizations organizations like the national sheriff's association all were against this idea that the searches should be without suspicion other correctional facilities were cited by the detainees showing that those other facilities like like ICE marshal service they required reasonable suspicion the Supreme Court decided that the detainee had not brought substantial evidence to overcome the deference owed to the local jail official the local jail I'm having some difficulty understanding you. But no deference is owed with respect to the actual facts of the case. Is there? Yes. The deference owed as to whether or not someone could actually see someone? The facts and the law are they're substantial to the local jail administrator. But not the fact of whether or not A saw B there's no deference owed there. It's what the significance of A seeing B was. Yes. My point is this. If the opinions of the professional organizations and the practices of other correctional facilities were not enough evidence to overcome the opinion of local jail officials then plaintiffs here with their declarations with nothing else other than attorney argument that's not enough. That's not enough evidence. That's not what Mr. Berman claims he has here. What Mr. Berman claims he has is evidence that A actually did see B. And he believes that he gets to the jury on the fact that A saw B. The evidence you're referring to are in the declarations of each of the named plaintiffs. They're identical. Not exactly, but substantially identical. They're conclusory. That's not enough. That sort of evidence is rejected by this court for a summary judgment. Conclusory, self-serving, really, the declarations present more questions than anything else because they're so bare bones. So, fine, I understand that the evidence, that's the argument. But my point is, is that here, those declarations of plaintiffs is not enough because of the nature of their declarations being conclusory. Okay, well, even though I admit I haven't been able to find it, he points to the Jennifer Freeman. I can find the deposition. I can't find what he's pointing to. But the Jennifer Freeman deposition says that A saw B. That's excerpts of record 55, for your reference. I can read it to you if you like, but I can't read it to  you don't like it. Please. Do you know what page it's on? Keep in mind, this is one page out of a much longer deposition, but this is what I think Mr. Verman might be referring to. Okay, the question is, okay, and my understanding is that any deputy at one of the control posts on the laptop could watch contemporaneously closed-circuit TV events happening, is that correct? Yes. And are they broken up into different views? Yes. So if one of the views has naked inmates being strip searched, they would be able to see that, yes. And that could also be a female deputy looking at a naked male inmate, correct? Yes. Why doesn't that get Mr. Verman to the jury? It's speculative. It could snow tomorrow in Portland, but that's not enough to go to the jury. A lot of things could happen in the world, and what the summary judgment requires is the plaintiff to come forth with non-speculative evidence that's not conclusory, that shows that they might have a case here. And combined with the legal standard that I told you about with substantial deference, there's not enough here for anybody to find and favor plaintiffs. Unless there's further questions to the court, I ask you to affirm the district court, because the district court here got it right. Thank you, counsel. Your honor, your honors, there is ample evidence that not only have plaintiffs put in their declarations being viewed by other female deputies under guard, the staff, and  police department as well. Captain E said it was possible to see naked inmates at that time. Trainer Thompson said they could be seen in the hallways with closed circuit television. Jennifer Freeman says they could be seen in hallways and the police department with closed circuit television with closed circuit television with closed circuits. We pray that you will reverse the trial court decision. Thank you. Do you have any evidence that you           so, please let us know. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank   you. Thank you.    you. Thank you very much. I hope we can put things on the next page. There were three     can do together. Thank you.
judges: PAEZ, NGUYEN, Eaton